DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

# STATE OF NEW JERSEY.

## NOVEMBER TERM, 1865.

---

THE TOWN OF BERGEN, IN THE COUNTY OF HUDSON, PLAINTIFFS IN ERROR, v. THE STATE, JANE VAN HORNE, DEFENDANTS.

1. In cases of assessments of contributions for public purposes against a large number of persons, the usual course pursued in this state is to vacate them, if erroneous, only as to the parties who are actors in the suit. But the court have the power to annul the whole assessment; and when the language of the record is plain and unambiguous, this court will hold the assessment annulled as an entirety.

2. When an assessment anew is to be made by three freeholders, according to the supplement of ninth March, 1859, (*Pamph. L.* 271,) it is the province of the corporate authorities to decide whether it shall be a partial or an entire assessment.

3. When part of the work was done by property owners, by consent of the common council, an assessment, including the expense of such work, will not be set aside by judicial action, except on the ground that it was a clear abuse of the public trust confided to them. The council had a right to select the property owners to do the work, and there being no pretence that the landowners, in performing their agreement, have not exercised a proper care and economy, and no ground

490

of suspicion of any sinister practice, the action of council cannot be held to be, in a legal sense, an abuse of their authority, so as to vitiate the assessment.

4. It should appear on the face of the proceedings of the assessors, that in making their allotment of the expenses, they took into consideration the damages sustained by the landowner, as well as the benefits to be derived by him from the improvement. This is expressly required by the charter, and its omission is a fatal defect.

5. It does not sufficiently appear that the assessors took into view, when forming a judgment as to the lands benefited, the whole of the real estate within the corporate limits, as required by the charter.

Error to Supreme Court.

In the year 1857, the council of the town of Bergen passed an ordinance, directing the grading, regulating, and flagging of Washington avenue, between the Communipaw road and the Bergen plankroad. A few days afterwards, the owners of the property lying on that part of said avenue, from the Communipaw road to the Morris canal, which canal is between the two roads above named, petitioned the council that they might be permitted to do the grading and flagging in front of their own property, and which was granted. This work was accordingly done by the landowners. The rest of the avenue, crossing the land of Jane Van Horne, and being that portion between the Morris canal and the Bergen plankroad, was regulated, graded, and paved by the authority and direction of persons appointed by the town council. An order was then made directing an assessment on the landowners to be made of the expense of the improvement, and one was accordingly made, the confirmation of which was set aside by the Circuit Court of the county of Bergen, as informal.

The assessment was again confirmed by the municipal authorities. The council then ordered a notice, requiring the persons assessed to make payment, and in compliance with such notice, Mrs. Van Horne paid her quota. The other landowners feeling aggrieved, because the expenses incurred by them in grading and paving had not been embraced in the assessment, sued out a *certiorari* to the Supreme

Court, which set aside the assessment and all the proceedings thereunder. During the pendency of this *certiorari*, an act of the legislature was passed, authorizing the authorities of the town of Bergen, in case any assessment made by virtue of their charter, had been or should thereafter be set aside, to cause such assessment to be made anew. And accordingly, the assessment above mentioned having been vacated by the Supreme Court, the common council directed a re-assessment of the expenses of the improvement in question. In this last assessment the commissioners included the expenses of the landowners, as well as that incurred by the municipal authorities. These last proceedings were carried by Jane Van Horne, on *certiorari*, into the Supreme Court, where they were set aside. That judgment was brought into this court by writ of error.

See 1 *Vroom* 307.

*I. W. Scudder* and *A. O. Zabriskie*, for plaintiffs.

*P. Bentley* and *B. Williamson*, for defendants.

The opinion of the court was delivered by

THE CHIEF JUSTICE. On the argument, several grounds were taken to convince this court that the assessment, which has been brought here by the present writ of error, is erroneous and should be set aside.

*First.* It was said that these proceedings were void as against the plaintiff in · *certiorari*, who is the defendant in error, because the previous assessment made for this same improvement had not been set aside as to her, but that, so far as she was concerned, it remained in full force. The insistment was that Mrs. Van Horne was no party to the *certiorari* removing such prior assessment, and that by the rules of practice adopted by the Supreme Court, an assessment of the kind in question is never set aside, *in toto*, but only as to those parties who, as prosecutors of the writ, bring it before the

court. As an auxiliary to this argument, it was further urged that the defendant in error had paid her quota of this prior estimate of expenses, and that the corporation was concluded by its receipt of such money.

It is unquestionable that in cases of assessment of contributions for public purposes against a large number of persons, the usual course pursued by the courts of this state is to vacate them, if erroneous, only as to the parties who are actors in the suit. It has not been the practice to annul the proceedings in gross, and very properly so, in consideration of the great public inconvenience and loss which would, as a general thing, ensue. But it cannot fail to be observed, that the existence of this practice by no means conclusively evinces what the Supreme Court actually did in the case under consideration, for the question still remains, did the court, in this instance, follow or depart from the usual course? It cannot be denied that the power existed in that tribunal to set aside and entirely annul the whole of the assessment, and all the proceedings connected with it, if it was deemed proper so to do, for that assessment and those proceedings had manifestly been brought up for review by force of the *certiorari* there pending. Now, it is obvious, that by avoiding the proceedings in favor of the plaintiffs in *certiorari*, and permitting them to stand, so far as related to Mrs. Van Horne, would not have effected a just result, for, as the distribution of the expenses was erroneous, it necessarily followed that the quota which had been allotted to her was likewise erroneous. As, therefore, an equitable adjustment of the expenses in question could only be obtained by a vacation of the entire proceedings, a strong presumption arises that the Supreme Court, in dealing with such a state of affairs, adopted a course which would effect such result. In view, then, of the particular case then pending, we do not think any implication is to be made, from the course of practice under ordinary circumstances, that the Supreme Court could not have intended to vacate the entire assessment thus brought before them.

But we do not think, and do not wish so to be understood, that this is a point to be settled at all by argumentative deductions from the usual course of judicial practice, or the aspects of the case in the court below. This question, like all others touching the judgment or decisions of a court, must, in our opinion, be settled strictly by the record alone. The judgment rendered by the Supreme Court was in the words following, viz.: "And it appearing to the court that the assessment and proceedings removed by the said *certiorari* are illegal, erroneous, and void, it is, therefore, ordered, considered, and adjudged by the court here, that the assessment and proceedings be set aside, reversed, and for nothing holden." This language, we think, is entirely unambiguous, and plainly annuls the assessment as an entirety. If the court had intended to reverse the whole proceedings, it is not easy to perceive how, to accomplish such purpose, more effective or appropriate terms could have been used. We are of opinion, then, that the judgment of the Supreme Court did set aside the assessment under consideration, as well to Mrs. Van Horne as to all other parties.

There is also a second ground on which, in the view of this court, the prior assessment against the defendant in error is to be considered as expunged.

By the supplement to the act to incorporate the town of Bergen, passed the ninth March, 1859, (*Pamph. L.* 271,) it is provided that in case any assessment or any estimate of value and damages "shall be set aside, in whole or in part, it shall be lawful for the common council to appoint three freeholders, who "shall proceed to make such assessment anew, in whole or in part, as the case may require."

This provision, plainly, was designed to confer authority to make a re-assessment of the cost of any improvement, as an entire thing, when the circumstances of the case should seem to require it. So far the legislative intent is clear. But who is to decide when the case requires an entire or partial re-assessment? We think that, of necessity, this power to decide must be held to be vested in the corporate authorities.

It is difficult to imagine that it was the design to lodge it elsewhere, for they are the parties called upon to exercise the function to make the re-assessment, and it would seem that a decision as to the extent of such re-assessment should necessarily precede all action in regard to it. And it is also self-evident that in most cases an assessment, *de novo*, is the only course which will harmonize with the rights of the parties, and the equities of the case.

The second objection pressed upon the attention of this court was, that the proceedings were erroneous, because in the sum assessed were embraced the moneys expended by the landowners in making the improvement in question. The line of argument was, that the charter did not authorize the council to delegate this authority, of performing the work on the streets to the landowners, but that public policy required that the town should be compelled to do it, by their agents, under their own supervision.

The grant of power contained in the charter of the town of Bergen, is couched, in this respect, in very general terms. The words are, that the corporation " may make and enforce all ordinances necessary or useful for opening, laying out, grading, and regulating streets and roads within the limits of said town, and laying and regulating side and crosswalks therein, for assessing the costs and expenses of the same equitably upon the owners of property who may be benefited thereby." It will, therefore, be observed that neither the mode of doing the work on the improvements specified, nor the persons by whom it shall be done, are designated in this statute. There is no restriction on the power thus conferred, to the effect that the town must do the work, or that it must be done under official supervision. The whole subject is committed, without trammels of any kind whatsoever, to the discretion of the legislative branch of the body politic. It is, consequently, wholly undeniable, that there is nothing in this charter which, either in express terms or by necessary implication, excluded the town council from the right to select the property owners as their agents to perform the

work incident to the grading of the street in question. This being the case, it unavoidably follows, that the order of the council in making that selection cannot be declared void, by judicial action, except on the ground that it was a clear abuse of the public trust confided to them. But the course taken indicates neither corruption, injustice, or oppression. No evil would result, *ex necessitate*, from the plan adopted. The ordinance itself prescribed the mode of grading, and specified the kind of work to be done. It is not pretended that the landowners, in performing their agreement, have not exercised a proper care and economy, and there is not the slightest ground for a suspicion of any sinister practice. Under these circumstances, we are of opinion that the action of the town council, in permitting the work in question to be done by some of the parties interested, cannot properly be held to be an abuse, in a legal sense, of their authority, and that the assessment based upon it is not, therefore, on that account, liable to be reversed in a court of law.

A third ground of objection was, that the original proceedings, in laying out the street in question, were not in conformity with the regulations prescribed in the charter of the town of Bergen, and were, on this account, void.

But we are of opinion that the proceedings referred to are not now before this court, and that the point thus presented cannot, consequently, be either considered or decided on this writ of error.

The foregoing are all the points raised on the argument, of a fundamental nature, and which called in question the right of the defendants in error to make the re-assessment in controversy. But there are others, which it becomes necessary to dispose of, of a merely formal character.

The first of these is the objection that the proceedings of the assessors do not show that, in making their allotment of the expenses, they took into consideration the *damage* sustained by the landowner as well as the benefits to be derived by him from the improvement. This, in our opinion, is required by the express language of the charter. It is obvious

that it will often happen, that in a given plot of lots of ground, some of them will be injured and others improved by the grading of a street. A building lot which is elevated above the level of the street, by a new grade, or which is depressed below it, will, as a general thing, be injured by the alteration. This element should enter into the estimate and apportionment of the expenses authorized by the charter of the town of Bergen. The language of the charter is, that the assessment is to be made "upon principles of equity, and according to the *damage or the benefit* which the owner or owners thereof may derive therefrom." This was the return of the assessors : "That in making said assessment, we make the same upon principles of equity, and according to the benefits which the owners of the several lots of ground derived therefrom." This statement does not manifest a compliance with the above quoted provision of the charter. The return says they appraised the benefits of the improvement, but it altogether omits to state that they took into their estimate the damages occasioned by the same cause. The omission was, probably, an oversight, as it appears from their oaths that these officers bound themselves to make their assessment "according to the damage or benefit" which the owners might derive from the work. The defect is, that from the return of these officers it does not appear that they performed this duty in the manner specified in their oath, and this is a matter which so nearly concerns the legal rightfulness of the transaction, that the omission cannot be supplied by intendment. We are of opinion, that on account of this imperfection, the assessment is not only informal, but fatally defective.

There is also error, as it appears to us, in another particular.

The second section of the charter of the town of Bergen, directs the expense of improvements made to the streets to be assessed "on the real estate in said town." (*Pamph. L.*, 1855, *p.* 442.) This description of assessable property, we understand, embraces all the land in the town, wherever

situate, which is benefited more than it is injured by the improvement. This was the construction put upon this section of the charter by the Supreme Court, as appears from the opinion of Mr. Justice Vredenburgh, in the case of the *State, Culver et al., pros.,* v. *The Town of Bergen,* 5 *Dutcher* 266. It was the duty, therefore, of the assessors, to take in their view, when forming a judgment as to the lands benefited, the whole of the real estate within the corporate limits, and we do not think that the report of these officers exhibits, with sufficient distinctness, a conformity to such duty. Their statement, in this respect, is in these words, viz.: " And we did, in our judgment, consider and adjudge that the owners of the said several lots and plots of ground were the parties benefited." This declaration certainly does not show or imply how far they extended their view for lands benefited, but it leaves that vital point entirely uncertain. For aught that appears, they may have been under the delusion that their duty required them to take into their estimate of benefits, only the land in the vicinity of the street which was improved, for under such circumstances, their return that the land mentioned by them was "the land benefited" would not have been improper. We think this return substantially defective, as it does not manifest, in a clear and unambiguous form, a compliance on the part of the assessors with the requirement of the town charter, in this important particular.

The decision of the Supreme Court is affirmed.

*For affirmance*—BEASLEY, C. J., BEDLE, CLEMENT, FORT, KENNEDY, VAN DYKE, VAIL, VREDENBURGH, WALES.    9.

*For reversal*—None.

CITED in *State* v. *Town of Bergen,* 5 *Vroom* 44; *State* v. *Inhabitants of Trenton,* 7 *Vroom* 501; *State* v. *Mayor, &c., of Paterson,* 8 *Vroom* 382; *State, Gobish, pros.,* v. *Inhabitants of North Bergen,* 8 *Vroom* 406.